Filed 10/13/23  P. v. Fegan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. STEPHEN FEGAN, Defendant and Appellant. | F083705 (Consolidated w/F085192) (Merced Super. Ct. No. SUF18939) **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Dale Dombkowski, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P. J., Peña, J. and Meehan, J.

## INTRODUCTION

In 1995, appellant and defendant Stephen Fegan (appellant) was convicted of two counts of first degree murder with special circumstances for killing his estranged wife and her boyfriend with an axe and a knife. He was sentenced to two consecutive terms of life in prison without the possibility of parole (LWOP). The judgment was affirmed on direct appeal. Thereafter, appellant filed four successive petitions for resentencing pursuant to former section 1170.95 of the Penal Code.[1] The trial court denied these petitions, and this court affirmed the trial court's orders.

In 2021, appellant filed his fifth petition for resentencing and asserted he was entitled to relief because he was convicted based on the felony murder rule. The trial court denied the petition. In this appeal from the trial court's order (case No. F083075), appellate counsel filed a brief with this court which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record. Appellant has filed a supplemental letter brief raising alleged claims of error from his jury trial and the denial of his fifth petition.

In 2022, while his appeal was pending from the denial of his fifth petition, appellant filed his sixth petition for resentencing with the trial court. The court denied his sixth petition with prejudice, and appellant has filed an appeal from that order (case no F085192). Appellate counsel filed a brief that raises a single issue – that the trial court lacked jurisdiction to deny his sixth petition because his appeal from the denial of his fifth petition was still pending on appeal.

We ordered consolidation of the appeals from the denial of appellant's fifth and sixth petitions. We will order modification of the trial court's order that denied his sixth

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated. Appellant filed his fifth petition under former section 1170.95. As will be explained below, the statute was substantively amended effective January 1, 2022, and then renumbered as section 1172.6 without further substantive changes on June 30, 2022. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

petition, and otherwise affirm the court's denial orders in both cases because he failed to make a prima facie case since the record of conviction shows he was tried and convicted as the actual killer and ineligible for resentencing as a matter of law.

## FACTS[2]

In December 1993, appellant and his wife, Teresa Leonard (Leonard), separated. They had one child. Appellant relocated to Roseville and moved in with his father. Leonard and their minor child moved to Merced and lived with James Hartery (Hartery).

Sometime around 4:30 a.m. on March 8, 1994, appellant's father got up and discovered appellant was gone and had taken his father's car without permission. Appellant's father contacted the Roseville Police Department because he was worried that appellant was desperate and might confront Leonard; he reported the stolen vehicle.

"On the morning of March 8, 1994, [appellant] drove from his father's home in Roseville … to the home of … Hartery in Merced. [Leonard and their minor child] had

---

[2] In this appeal, appellant requested this court take judicial notice of the jury instructions given at his trial and augment the record with those instructions. This court granted appellant's motion to augment and denied the judicial notice request as moot.

We subsequently advised the parties that upon reconsideration, we were considering taking judicial notice of the entirety of this court's records in *People v. Fegan* (F025279, Dec. 31, 1997) [nonpub. opn.] (*Fegan I*), that affirmed his convictions on direct appeal.

The parties have not objected, and we thus take judicial notice of the record in *Fegan I*, *supra*, F025279 and the nonpublished opinion (*ibid.*) in appellant's direct appeal. The following facts are from this court's records and nonpublished opinion in *Fegan I*.

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*People v. Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).) We have stated the facts from the record of appellant's direct appeal to place his arguments in context and will not rely on these facts to resolve appellant's appeal.

recently moved in with Hartery. Coupled with Leonard's romantic relationship with Hartery, this turn of events caused [appellant] great distress and anger. When [appellant] arrived at Hartery's home, he threw two Molotov cocktails through a front window and into Hartery's living room. [Appellant] then entered the home through the broken window. Awakened perhaps by the sound of breaking glass or the smell of fire from one of the incendiary devices, Hartery made his way into the living room. [Appellant] attacked him from behind, hitting Hartery in the head with an axe and then, with a knife, stabbing Hartery first in the back and later in the chest. Leonard also entered the living room; appellant chased her into another room of the house and stabbed her three times in the back. At some point, [appellant] took his [child], left Hartery's home, and drove away. Hartery and Leonard died from the wounds [appellant] inflicted." (*Fegan I*, *supra*, F025279.)

At approximately 7:00 a.m., appellant drove up to his father's house in Roseville. An officer was there and talking to his father about his earlier report. Appellant entered the house, looked at his father, and started crying. There was a large amount of blood on his clothes. Appellant was wearing a work glove on his right hand, blood was dripping out of the glove, and there was a cut on his hand. Appellant's four-year-old child was with him. There was blood on the child's legs, but he was not physically injured. The child appeared to be in shock and said he had seen a fire and a fight.

There was blood throughout the interior of the father's car. A red gasoline can was found in the car, and appellant's father said it had been kept in his garage. Appellant's father reported his axe and a couple of his Mason jars were missing.

An axe and a knife were found at the crime scene. The axe had glass particles in the handle and was identified as belonging to appellant's father. The blood on the axe head was identified as primarily belonging to appellant, with small amounts from a mixture of Leonard and Hartery. The knife's handle contained the blood of appellant and Leonard, and Hartery's blood was on the blade. The landlord of Hartery's house testified

4.

she often visited the residence, was familiar with the kitchen, and had never seen that knife there.

Appellant was immediately taken into custody at his father's house and transported to the police department. When an officer walked past the jail's booking room, appellant asked if he could talk to him. After being advised of and waiving his constitutional rights, appellant calmly and deliberately told the officer, " 'I don't know what happened to me. I don't know why I did what I did. I'm not crazy or anything, but I must have been out of my mind…. [¶] … [¶] I just don't know why I had to do this now …." (*Fegan I*, *supra*, F025279.)

Appellant was booked into the county jail. During a visit with his father, appellant told him that he threw the axe through Hartery's window and entered the house through the broken window. He wrestled with Hartery, Leonard was stabbed in the back with the knife while he was struggling with Hartery, he continued to wrestle with Hartery, and he was knocked down. Appellant said he picked up the axe and hit Hartery in the head.

**Defense Evidence**

Appellant did not testify at his trial. Robert Bittle, a psychiatrist and an expert in forensic psychiatry, testified he reviewed appellant's medical records and personal and family history, investigative reports of the murders, and conducted a four-hour examination of appellant. Dr. Bittle testified to his opinion that at the time of the murders, appellant suffered from manic depression, postconcussive syndrome, chronic neck pain, and alcohol dependency. He further believed that during the murders, appellant had a "mixed bipolar episode … he was both depressed and he was hypomanic." (*Fegan I*, *supra*, F025279.)

## PROCEDURAL SUMMARY

On October 4, 1994, an information was filed in the Superior Court of Merced County charging appellant with counts 1 and 2, the murders of Leonard and Hartery (§ 187), with two enhancements for personal use of a deadly or dangerous weapon in the

5.

commission of the murders, a knife and an axe (§ 12022, subd. (b)). The following three special circumstances were alleged as to counts 1 and 2: (1) the murders were committed during the commission, attempted commission, or immediate flight after the commission or attempted commission, of burglary (§ 190.2, subd. (a)(17)(vii)) and (2) arson (§ 190.2, subd. (a)(17)(viii)), and (3) that multiple murders were committed (*id.*, subd. (a)(3)).

Appellant was separately charged with count 3, burglary (§ 459), count 4, arson (§ 451, subd. (b)), and count 5, unlawful taking of his child (§ 277), with two enhancements alleged as to each count, that he personally used a deadly or dangerous weapon, a knife and an axe (§ 12022, subd. (b)). No other defendants were charged in the case.

On September 15, 1995, it was stipulated the People would not seek the death penalty.

**Commencement of Trial and Jury Instructions**

On November 28, 1995, appellant's jury trial began with the presentation of evidence. Defendant was tried by himself without any codefendants.

The jury received CALJIC No. 8.10, that appellant was charged with murder in counts 1 and 2, and that "[e]very person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of burglary or arson is guilty of the crime of murder," the prosecution must prove a person was killed, the killing was unlawful, "the killing was committed with malice aforethought or occurred during the commission or attempted commission of burglary or arson," and that "the prosecutor has elected to proceed under both theories," the "first of which is alleged to be murder with malice aforethought."

The jury was instructed on express and implied malice (CALJIC No. 8.11), the definitions of premeditation and deliberation for first degree murder (CALJIC No. 8.20), and the definition of second degree murder (CALJIC Nos. 8.30, 8.31). CALJIC No. 8.71 stated that if the jury was convinced beyond a reasonable doubt "that the crime of murder

6.

has been committed by a defendant, but you have a reasonable doubt whether such murder was of the first or second degree, you must give defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree."

CALJIC No. 8.21 stated that "another theory by which the prosecution is attempting to prove the defendant is guilty of first degree murder is referred to as felony murder. [¶] Felony murder is the unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of burglary or arson *when the defendant had the specific intent to commit the crime of burglary or arson*," and the definitions for arson and burglary were stated in separate instructions. (Italics added.)

The jury was instructed on the special circumstances (CALJIC No. 8.80) – that if the jury found defendant guilty of first degree murder, it had to determine whether the special circumstances were true, "*that the first degree murder was committed by the defendant while the defendant was engaged in the commission of burglary. That the first degree murder was committed by the defendant while the defendant was engaged in the commission of arson* and that said murders were multiple murders." (Italics added.)

CALJIC No. 8.81.17 defined both the burglary and arson special circumstances – that "first degree murder was committed *while the defendant was engaged in* … the commission or attempted commission of a burglary or an arson; or [¶] [t]hat first degree murder was committed during the immediate flight after the commission or attempted commission of a burglary or an arson; and [¶] [t]he first degree murder was committed in order to carry out or advance the commission of the crime of burglary or arson or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the commission or attempted commission of burglary or arson were merely incident to the commission of first degree murder," and burglary and arson were defined in separate instructions.

7.

To find the multiple murder special circumstance true, the jury had to find that the defendant "has in this case committed one crime of murder of the first degree and the other death is the crime of murder of the first or second degree."

The jury was separately instructed with the definitions of count 3, burglary (CALJIC Nos. 14.50, 14.51, 14.52); count 4, arson (CALJIC Nos. 14.80, 14.84, 14.89, 14.91); and count 5, unlawful taking of a child (CALJIC No. 9.70.5).

The jury also received defense instructions. CALJIC No. 3.32 stated evidence had been received "regarding a mental disease, mental defect or mental disorder of the defendant at the time of the commission of the crimes charged," and such evidence was solely to determine whether or not "*the defendant actually formed the required specific intent, premeditated, deliberated or harbored malice aforethought which are elements of the crimes charged.*" (Italics added.) CALJIC No. 4.40 stated that a person was not guilty of a crime "when *he engages in conduct*, otherwise criminal, when acting under threats and menaces" (italics added), where the threats are menaces are such they would cause a reasonable person to fear his life would be in immediate danger if he did not engage in the conduct charged, and such person "believed his life was so endangered." If there was evidence of provocation that induced an unlawful killing, but was not sufficient to reduce the homicide to manslaughter, the jury could consider the provocation to determine if the defendant acted with premeditation and deliberation.

The jury was not instructed on the difference between principals, accomplices, and accessories. The jury was not instructed on aiding and abetting, conspiracy, the natural and probable consequences doctrine, or that a coparticipant committed the underlying felony offenses of arson and/or burglary.

**Closing Arguments**

In closing argument, the prosecutor argued the evidence showed appellant decided to kill Leonard and Hartery, "[h]e devised a plan and carried it out, murdering [them] in a

most brutal manner," the People proved beyond a reasonable doubt that appellant "in fact did commit those murders," and he was guilty of two counts of first degree murder.

In defense counsel's closing argument, he conceded that "[w]hat [appellant] did was absolutely wrong," the homicides were not justifiable, and appellant "doesn't come in here claiming to be innocent. Mr. Fegan is guilty. Mr. Fegan admits his guilt to you." Counsel argued appellant suffered from a mental disease, the issue was his intent, and he did not intend to kill Leonard and Hartery.

Counsel further argued the People failed to meet the burden of proving premeditation and the special circumstances, and appellant, in his own mind, may have believed he had "just cause" to take his child. He did not intend to burn down the house, and instead intended to divert Hartery from killing him as he took his child. Defense counsel argued the homicides constituted manslaughter and not murder.

**Convictions and Sentence**

On December 13, 1995, the jury convicted appellant of counts 1 and 2, the first degree murders of Leonard and Hartery (§ 187). The jury found true the three special circumstances that the murders were committed in the commission, attempted commission, or immediate flight after the commission of a burglary (§ 190.2, subd. (a)(17)(vii)); an arson (*id*., subd. (a)(17)(viii)); and multiple murders were committed (*id*., subd. (a)(3)). As to count 1, the jury found true that appellant personally used a deadly or dangerous weapon, a knife, in the murder of Leonard; and as to count 2, he used both a knife and an axe in the murder of Hartery (§ 12022, subd. (b)).

Appellant was also convicted of count 3, burglary (§ 459), count 4, arson of an inhabited structure (§ 451, subd. (b)), and count 5, unlawfully taking a child without a legal right (§ 277).

On January 16, 1996, Judge Cornell, who presided over the jury trial, conducted the sentencing hearing. The court imposed an aggregate determinate term of nine years four months for counts 3, 4, and 5, to be served first. As to each of counts 1 and 2, the

9.

court imposed two consecutive, indeterminate LWOP terms, plus one year for the personal use enhancements.

**Direct Appeal**

In his direct appeal, appellant argued there were alleged evidentiary errors and his convictions were not supported by substantial evidence. On December 31, 1997, this court filed the nonpublished opinion that affirmed the judgment. (*Fegan I*, *supra*, F025279.)

We held there was overwhelming evidence to support the jury's findings of premeditation and deliberation for his two convictions of first degree murder. "Although [appellant] argues that a sudden burst of violence on his part and nothing more precipitated the killing of Leonard and Hartery, the record refutes this assertion." (*Fegan I*, *supra*, at p. *4, italics added.) There was "ample evidence" that appellant planned to kill Hartery. "By approximately midnight on the day of the murders, [appellant] decided 'to do this commando rescue' 'to get [his child] out of there and get [his] wife.' Sometime before 4:30 on the morning of the murders, [appellant] took his father's car without permission. To avoid waking his father, [appellant] manually opened the garage door and pushed the vehicle out of the garage without turning on the car's ignition.[3] Before leaving his father's house, [appellant] also took with him an axe, a knife, two glass jars, and a gasoline can. He then drove to Hartery's house in Merced, where he expected to find his estranged wife, his [child], and Hartery. He had decided by this time to confront Hartery, whom [appellant] considered 'a *mortal* enemy' (emphasis added)." (*Ibid.*)

---

[3] "Much of the planning evidence came from [appellant's] own words in response to questions posed by a defense investigator. The trial court admitted a transcript of the taped interview conducted in April 1994 into evidence and without limitation." (*Fegan I, supra,* F025279, p. *4, fn. 5.)

"Once he arrived at Hartery's home, [appellant] first used the axe to break and knock out the front window. He then ignited at least one of the glass jars, which he had fashioned into an incendiary device, and threw it into the house through the broken window. [Appellant] then entered the house through the same window. When Hartery entered the front room in an apparent effort to put out the fire, [appellant] approached Hartery from behind and used the axe to hit Hartery in the head. The blow probably knocked Hartery to the ground and perhaps rendered him unconscious. [Appellant] then used the knife to repeatedly stab Hartery." (*Fegan I*, *supra*, F025279, at p. *5.) "[Appellant], by his own admission, used the Molotov cocktails to start the fire in order to create a diversion. Indeed, it was when Hartery entered the front room in an apparent effort to put out the fire that [appellant] began his assault by ambush against Hartery." (*Id.* at p. *9.)

This court found "persuasive evidence that [appellant] planned to kill Leonard. In addition to the steps [appellant] took before he arrived at the Hartery home, [appellant] turned his attention toward his estranged wife after attacking Hartery. He chased her from the living room into the dining room, where he stabbed her in the back. [Appellant's] act of chasing Leonard while armed alone warrants a conclusion that he had a plan, however briefly contrived, to attack and kill her. [Citation.]" (*Fegan I*, *supra*, F025279, at p. *5, fn. omitted.)

The record was also "replete with evidence about [appellant's] prior relationship with Leonard and Hartery from which the jury could legitimately and reasonably have inferred that [appellant] was motivated by hatred and jealousy to kill both his victims. [Citation.] [Appellant] blamed Leonard for everything that was wrong in their relationship. In [appellant's] mind, his wife had leaned on him for support. Then, she found a good job at a time when he could not find work. Following their separation, Leonard moved with the couple's son to Merced, where she met and became involved with Hartery. [Appellant] grew increasingly agitated and angry about Leonard's

relationship with Hartery.  [Appellant] was distraught that his wife and [child] had moved in with Hartery.  [Appellant] told Leonard they were still married and she could not live with Hartery." (*Fegan I*, *supra*, F025279 at pp. *5–*6.)  "Shortly before he went on his deadly rampage, [appellant] expressed his contempt for Leonard and Hartery ….  [Appellant] suspected Hartery wanted, and was trying, to be the [child's] father.  [Appellant] admitted he went so far as to call and threaten Hartery ' "to stay the f[**]k away from my family or I would knock his block off." ' " (*Id*. at p. *6.)

"The multiple stab wounds and the brutality of [appellant's] attack on both victims support a finding of premeditated murder in each instance.  [Citation.]" (*Fegan I*, *supra*, F025279 at p. *6.)  "[Appellant] used the items he took from his father's home to facilitate his attacks on both of his victims.  After using the axe to render Hartery helpless, [appellant] repeatedly stabbed him in the back, puncturing Hartery's liver.  He also slit Hartery's throat, severing his carotid artery and jugular vein.  Later, after killing his wife, [appellant] again attacked Hartery by stabbing him in the chest so as to puncture the lung and sever the heart vessels.  [Appellant] left the knife in Hartery's chest.  [¶] After his initial attack on Hartery, [appellant] chased his estranged wife from the living room to the dining room.  When he caught up with her, he stabbed her in the back, cutting two ribs and puncturing the lung and aorta.  She suffered a total of three stab wounds." (*Id*. at pp. *6–*7.)  "[T]here was more than enough evidence to justify a conclusion that [appellant] killed his victims willfully as well as with premeditation and deliberation so as to warrant the jury's return of both first degree murder verdicts." (*Id*. at p. *7.)

The California Supreme Court denied appellant's petition for review.

## SENATE BILL NO. 1437

As will be fully discussed below, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) went into effect on January 1, 2019, and amended section 189, subdivision (e) to state that "a participant in the qualifying felony is liable for felony

murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life." (*People v Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) "The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v Harden, supra,* 81 Cal.App.5th 45, 50–51; *Strong, supra,* 13 Cal.5th at pp. 707–708.)

Senate Bill 1437 also created a petitioning process codified in former section 1170.95, that permitted a defendant "with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill … 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

## APPELLANT'S FIRST PETITION FOR RESENTENCING

"On January 9 and 31, 2019, [appellant] filed petitions for writ of habeas corpus. In part, [appellant] asked the court *to recall his sentence pursuant to [former] section 1170.95,*" and raised claims of alleged trial errors. (*People v. Fegan*, Aug. 3, 2021, F081054 [nonpub. opn.] p. *3, italics added (*Fegan II*).)

"The People responded the court should summarily deny [appellant's] request for resentencing based on the passage of Senate Bill … 1437 … because he did not qualify for relief under [former] section 1170.95. They attached and referred to our appellate opinion from [appellant's] direct appeal, which included a statement of facts that was 'essentially undisputed' .… The People explained the record thus established defendant was the actual killer and, therefore, was not entitled to relief." (*Fegan II, supra*, F081054, at p. *3.)

13.

**The Court's Denial of Appellant's First Petition**

"The [trial] court denied the petitions for writs of habeas corpus on February 28, 2019, finding [appellant] had not set forth the requisite facts for the granting of the petition. With regard to [appellant's] claim for relief under [former] section 1170.95, the court reasoned that *[appellant] was not convicted under a felony-murder theory. Rather, '[h]e was convicted of two premeditated and deliberate murders, with multiple special circumstances under section 190.2(d). He was the actual killer.'* " (*Fegan II*, *supra*, F081054, at p. *4, italics added)

## APPELLANT'S SECOND, THIRD, AND FOURTH
## PETITIONS FOR RESENTENCING

"Approximately a year later, [on] February 26, 2020, [appellant] filed a [second] petition for resentencing pursuant to [former] section 1170.95 using a preprinted form. He checked boxes stating that a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory or the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder under a felony-murder theory or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437)," and requested appointment of counsel. (*Fegan II*, *supra*, F081054, at p. *4.)

On March 2, 2020, prior to receiving a ruling on his second petition, "appellant filed [a third] petition for resentencing pursuant to [former] section 1170.95 using a preprinted form. He again checked boxes stating a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory or the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder under a felony-murder theory or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of changes made to

14.

sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437)," and requested appointment of counsel. (*Fegan II*, *supra*, F081054, at p. *4.)

On or about March 5, 2020, appellant "again filed another petition for resentencing pursuant to [former] section 1170.95 using a preprinted form and checking the same boxes," that constituted his fourth petition. (*Fegan II*, *supra*, F081054, at pp. *4–*5.)

**The Trial Court's Denial of Appellant's Second, Third and Fourth Petitions**

The trial court denied appellant's second, third, and fourth petitions for resentencing in light of the denial of his first petition, because they were "successive petitions on the same issue."

**This Court Affirms the Denials of Appellant's Petitions**

On August 3, 2021, this court filed the nonpublished opinion in *Fegan II*, *supra*, F081054, that affirmed the trial court's order that denied appellant's second, third, and fourth petitions for resentencing. We held the trial court's failure to appoint counsel was not prejudicial because "the record established [appellant] was the actual killer, and the jury's true findings on the felony-murder special-circumstance enhancements rendered [appellant] ineligible for relief as a matter of law. Thus, the court did not err in denying [appellant's] petitions, and any alleged procedural errors were harmless." (*Fegan II*, *supra*, F081054, at p. *8.)

As a separate matter, this court stated that "the record reflects, *and [appellant] does not contest, that he was the actual killer*. Thus, he was also ineligible for relief as a matter of law under [former] section 1170.95 on that basis. Accordingly, the court did not error in denying his petition, and any alleged procedural error in failing to appoint … counsel during the petition process was harmless…." (*Fegan II*, *supra*, F081054, at p. *11, italics added)

15.

On November 12, 2021, appellant, again acting in pro. per., filed a fifth petition for resentencing of his murder convictions under former section 1170.95, and requested appointment of counsel.

Appellant's supporting declaration consisted of a preprinted form where he checked boxes that stated (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) at trial, he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; (3) he could not be convicted now of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019; and (4) he could not be convicted of first degree murder because of the changes made to section 189 because he did not, with the intent to kill, act, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of first degree murder; and the victim was not a peace officer.

Appellant did not check the box on the preprinted form that stated he was not the actual killer.

**The Trial Court's Order**

On November 29, 2021, the trial court filed an order that summarily denied appellant's fifth petition because it was "a successive petition. This court previously denied this petition, and [appellant] appealed to the Fifth Appellate District. On October 14, 2021, the appellate court issued a remittitur. The appellate court found that [appellant] is categorically ineligible for relief under … section 1170.95. The appellate court upheld this court's ruling. As such, this petition is denied."

16.

On December 22, 2021, appellant filed a notice of appeal from the trial court's order of November 24, 2021 (F083705), which is the subject of part of the instant consolidated appeal.

## APPELLANT'S SIXTH PETITION FOR RESENTNCING
### (Pending Appeal in Case No. F085192)

On August 17, 2022, appellant, again acting in pro. per., filed his sixth petition for resentencing in the trial court pursuant to section 1172.6, while his appeal from the denial of his fifth petition was pending before this court in case No. F083507. He requested appointment of counsel.

Appellant filed a supporting declaration that consisted of a preprinted form where he checked boxes that (1) he was eligible for resentencing because a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or manslaughter; and (3)he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. (F085192, CT 76-77)

**The Trial Court's Denial of the Petition**

On or about October 5, 2022, the trial court filed an order that summarily denied appellant's sixth petition "with prejudice" because appellant could not "re-litigate what has already been reviewed on appeal. The Fifth District Court of Appeal held that 'the record conclusively establishes [appellant] was ineligible for relief under [former] section 1170.95 as a matter of law as he was convicted under still-valid theories of murder.' "

On October 26, 2022, appellant filed a notice of appeal from the trial court's order of October 5, 2022 (case No. F085192), which is the other part of the instant consolidated appeal.

**APPELLATE ISSUES**

Appellant has two appeals pending before this court that have been consolidated, and the parties have filed separate briefs in the two cases.

In case No. F083507, the appeal from the trial court's denial of appellant's fifth petition for resentencing, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*. The brief also included counsel's declaration that appellant was advised he could file his own brief with this court. This court sent appellant an order that he could file a supplemental letter or brief raising any arguable issues. Appellant filed a lengthy supplemental brief, raising claims of error arising from both his jury trial and the denial of his fifth petition.

In case No. F085192, the appeal from the trial court's denial of appellant's sixth petition, appellate counsel filed a brief that raised one issue – that the trial court lacked jurisdiction and its order was "null and void" because appellant's appeal from the denial of his fifth petition was still pending before the appellate court at the time of the trial court's ruling.

**DISCUSSION**

## I.    Senate Bill Nos. 1437 and 775, and Section 1172.6

We begin with Senate Bill 1437's (2017–2018 Reg. Sess.) amendments of sections 188 and 189, the enactment of former section 1170.95, and subsequent statutory amendments.

As discussed above, Senate Bill 1437 went into effect on January 1, 2019, and "amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill,

18.

acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v Harden, supra,* 81 Cal.App.5th at pp. 50–51; *Strong, supra,* 13 Cal.5th at pp. 707–708.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95. (*Strong, supra*, 13 Cal.5th at p. 708; *People v. Lewis* (2021) 11 Cal.5th 952, 959.) The initial version of former section 1170.95 permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill … 1437." (*People v. Flores*, *supra*, 44 Cal.App.5th at p. 992.)

Effective January 1, 2022, Senate Bill No. 775 (Reg. Sess. 2020–2021) (Senate Bill 775) made substantive amendments to former section 1170.95 that were consistent with *People v. Lewis*, *supra*, 11 Cal.5th 952, and also " 'clarified that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural and probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes. (*People v. Saibu*, *supra*, 81 Cal.App.5th at p. 714.)

Section 1172.6, subdivision (a) thus states:

"(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which

19.

malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)[4]

The court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id*., subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

To demonstrate prejudice from the denial of a section 1172.6 petition before the issuance of an OSC, the petitioner must show it is reasonably probable that, absent the

---

[4] While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f).)

20.

error, his petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

If an order to show cause (OSC) is issued, "the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence…." (§ 1172.6, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens…." (§ 1172.6, subd. (d)(3).)[5]

---

[5] "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing" in determining whether he made a prima facie case for relief. (*People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

## II.     Appellant was Ineligible for Resentencing as a Matter of Law

Before we address appellant's specific contentions in this consolidated appeal, we review the record of conviction to determine whether the trial court correctly denied appellant's numerous petitions without issuing an OSC.

The prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*Lewis, supra,* 11 Cal.5th at p. 971.)  The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Ibid.*)

In determining whether a petitioner made a prima facie case, the court may review the record of conviction "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra,* 11 Cal.5th at pp. 971–972 & fn. 6.)  As explained above, the record and opinion from a petitioner's direct appeal are part of the record of conviction. (*Id.* at p. 972.)  The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*People v. Clements*, 75 Cal.App.5th at p. 292; *Lewis*, at p. 972.)

A petitioner convicted of murder is ineligible for resentencing, and the petition may be denied without issuing an OSC, if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that the petitioner was the actual killer. (§§ 188, subd. (a)(3), 189, subd. (e); *Lewis, supra*, 11 Cal.5th at p. 971; *People v. Gentile* (2020) 10 Cal.5th at 830, 842–843; *People v. Lopez* (2022) 78 Cal.App.5th 1, 14–15.)  Even if convicted under the felony-murder rule,

the petitioner is ineligible for resentencing if he was the actual killer. (§§ 188, subd. (a); 189, subd. (e)(1); 1172.6, subd. (a)(3).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) The record of conviction includes the charging documents, the jury instructions (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251–1252; *People v. Offley* (2020) 48 Cal.App.5th 588, 599; *People v. Harden*, *supra*, 81 Cal.App.5th at pp. 50, 54–55), the closing arguments, and the verdict. (*People v. Lopez*, *supra*, 78 Cal.App.5th at p. 13; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.)

*Analysis*

In this case, the information, the jury instructions, closing arguments, and verdict establish appellant was prosecuted solely under the theory that he was the actual killer and the only person who committed the two murders, the burglary, the arson, and other charged offenses. Appellant was the only person charged in the information. The jury was not instructed on the liability of accomplices, accessories, conspiracy, or aiders and abettors, or not to speculate about any uncharged parties.

While the court instructed the jury with CALJIC No. 8.21 on the felony-murder rule, the prosecution's theory was that appellant was the only person who committed the two murders, the burglary, and the arson. The jury was instructed: "Felony murder is the unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of burglary or arson *when the defendant had the specific intent to commit the crime of burglary or arson….*" (Italics added.) The instructions on the special circumstances stated that if the jury found defendant guilty of first degree murder, it had to determine if "*the first degree murder was committed by the defendant while the defendant was engaged in the commission of*

23.

*burglary, that the first degree murder was committed by the defendant while the defendant was engaged in the commission of arson* and that said murders were multiple murders." (Italics added.) CALJIC No. 8.81.17 further defined both the burglary and arson special circumstances – that "first degree murder was committed *while the defendant was engaged in …* the commission or attempted commission of a burglary or an arson; or [¶] [t]hat first degree murder was committed during the immediate flight after the commission or attempted commission of a burglary or an arson…." (Italics added.)

A defendant may be convicted of felony murder under section 189, subdivision (e) and still be ineligible for relief under section 1172.6 if the record of conviction establishes he was the actual killer. (*People v. Lopez, supra*, 78 Cal.App.5th at pp. 15–16.) The felony-murder instructions expressly stated the jury had to find appellant committed the murders while he was committing burglary and/or arson. In addition, the court gave the defense instructions requested by appellant, that evidence had been received "regarding a mental disease, mental defect or mental disorder of the defendant at the time of the commission of the crimes charged," and such evidence was solely to determine whether or not "*the defendant actually formed the required specific intent, premeditated, deliberated or harbored malice aforethought which are elements of the crimes charged.*" (Italics added.) CALJIC No. 4.40 stated a person was not guilty of a crime "when *he engages in conduct, otherwise criminal*, when acting under threats and menaces," where the threats are menaces are such that they would cause a reasonable person to fear his life would be in immediate danger if he did not engage in the conduct charged, and such person "believed his life was so endangered." (Italics added.)

The parties' closing arguments were based upon the jury instructions, that appellant was the actual killer. The prosecutor argued the evidence showed appellant decided to kill Leonard and Herty, and "[h]e devised a plan and carried it out, murdering [them] in a most brutal manner." Defense counsel conceded in closing argument that

"[w]hat [appellant] did was absolutely wrong," and appellant "doesn't come in here claiming to be innocent. *Mr. Fegan is guilty. Mr. Fegan admits his guilt to you.*" Counsel argued appellant suffered from a mental disease, he did not intend to kill Leonard and Hartery, and he was guilty of manslaughter and not murder.

The record of conviction thus establishes that appellant was charged, tried, and convicted as the actual killer, his petitions failed to state a prima facie case, and he was ineligible for resentencing under section 1172.6 as a matter of law.

## III. Appellant's Arguments About His Jury Trial and Sentencing Issues

We turn to appellant's appeal from the trial court's denial of his fifth petition (case No. F083507). As explained above, appellant's attorney filed a brief pursuant to *Wende* and *Delgadillo*; thereafter, appellant filed a supplemental brief in response to this court's briefing order.

In his supplemental brief, appellant raises several arguments about alleged errors that purportedly occurred at his jury trial and sentencing hearing. He also asserts his convictions and the special circumstance findings are not supported by substantial evidence. Appellant further contends he was not the actual killer, the deaths were "accidents," he was engaged in "mutual combat," he used "self-defense" on one of the victims, and he "fought for his life" over the knife.

These contentions are not cognizable in this appeal. Former section 1170.95 and current section 1172.6 do not permit a petitioner to establish eligibility for resentencing based on alleged errors leading to his conviction. (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.) " 'The purpose of [section 1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947 (*Farfan*).)

**IV.    Appellant's Arguments About the Trial Court's Denial of His Fifth Petition**

Appellant raises additional issues in his supplemental brief filed in the appeal from the denial of his fifth petition (case No. F083705).  He asserts he was entitled to file his fifth successive petition, despite the denial of his prior petitions, because of changes in the law enacted by Senate Bill 775 (2020–2021 Reg. Sess.).  He also argues his fifth petition should have been granted because the prosecutor relied on the felony-murder rule, the natural and probable consequences doctrine, and imputed malice to convict him of murder.

### Successive Petitions

In *Farfan, supra*, 71 Cal.App.5th 942, the court addressed when successive petitions for resentencing are cognizable.  In 2019, the defendant filed a petition for resentencing of his murder conviction, shortly after former section 1170.95 was enacted.  The superior court denied the petition and the defendant did not file an appeal.  In 2020, the defendant filed a second petition raising the same issues, along with a motion for reconsideration, based upon new legal authority that undermined the basis for the superior court's denial of his first petition.  The superior court denied both motions.  (*Farfan*, at p. 946.)

*Farfan* held a petitioner may file successive petitions for resentencing under former section 1170.95 if the subsequent petitions are based on new legal authority.  (*Farfan, supra*, 71 Cal.App.5th at pp. 946–947, 950–951.)  *Farfan* rejected the People's argument that collateral estoppel barred defendant's second petition, because even the People conceded former section 1170.95 contained no express bar to successive petitions "where, as here, the subsequent petition *rested on new legal authority* which challenged the basis for the superior court's summary denial of the previous petition."  (*Farfan*, at pp. 946–947, 950, italics added.)

*Farfan* held the California Supreme Court's ruling in *Lewis*, and other cases published after appellant's first petition was denied, demonstrated the "still-evolving state

of [former] section 1170.95 jurisprudence" and appellant's second petition was not barred by collateral estoppel. (*Farfan, supra*, 71 Cal.App.5th at p. 950.) "In our view, application of collateral estoppel to bar consideration of appellant's 2020 petition would thwart Senate Bill ... 1437's overall purpose of ensuring that 'a person's sentence is commensurate with his or her individual criminal culpability' [citations], and that 'all those entitled to resentencing are able to obtain relief' [citation]. This is especially true in this case, where the superior court never appointed counsel even though appellant filed two facially sufficient petitions." (*Ibid.*)

*Farfan* also rejected the People's claim that a petition filed under former section 1170.95 was similar to a petition for writ of habeas corpus. (*Farfan, supra*, 71 Cal.App.5th at pp. 950–951.) While successive habeas petitions cannot not be filed on the same factual and legal grounds, "the general rule does not apply in habeas proceedings *when there has been a retroactive change in the law affecting the petitioner.* [Citation.] As our Supreme Court explains, a change is retroactive when it 'is substantive rather than procedural (i.e., it alters the range of conduct or the class of persons that the law punishes, or it modifies the elements of the offense) or when a judicial decision undertakes to vindicate the original meaning of the statute.' " (*Id.* at p. 951, italics added.) "Under this standard, not only are the changes to the law effected by Senate Bill ... 1437 themselves retroactive, but judicial interpretations of [former] section 1170.95 may afford a petitioner grounds for claiming eligibility for relief under the statute that were not previously available under other judicial interpretations. Here, because appellant's 2020 petition was based on new authority which challenged the primary ground for the superior court's summary denial of his 2019 petition, the 2020 petition was not procedurally barred as a successive petition." (*Ibid.*)

While *Farfan* held the defendant in that case could file a successive petition, it also held the defendant was still ineligible for relief as a matter of law. (*Farfan, supra*, 71 Cal.App.5th at p. 947.)

27.

*Analysis*

Appellant asserts he was entitled to file his fifth petition for resentencing because of changes in the law enacted by *Lewis* and Senate Bill 775 (2020–2021 Reg. Sess.).

Appellant's fifth successive petition was cognizable because of the Supreme Court's decision in *Lewis* and Senate Bill 775's procedural amendments to section 1172.6, clarifying that in making the prima facie determination, the trial court must appoint counsel if requested by defendant, provide for briefing by the parties, conduct a hearing on the petition, and give reasons if the court denies the petition without issuing an order to show cause. (§ 1172.6, subds. (b), (c).)

When the trial court denied appellant's fifth successive petition, it gave reasons for doing so, but issued a summary denial without granting his request for appointment of counsel, allowing for briefing, or conducting a hearing, in violation of *Lewis* and the amendments enacted by Senate Bill 775. Thus, his fifth petition was cognizable based on changes in statutory and case authority.

While Senate Bill 775 enacted these procedural requirements, the amendments did not change the California Supreme Court's further holding in *Lewis* – that to demonstrate prejudice from the denial of a section 1172.6 petition before the issuance of an OSC, the petitioner must show it is reasonably probable that, absent the error, his petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *People v. Watson, supra,* 46 Cal.2d at p. 836.)

The trial court's summary denial of appellant's fifth petition, without appointing counsel or conducting a hearing, was not prejudicial because the record of conviction established that he was convicted of two counts of first degree murder as the actual killer. His fifth petition failed to raise any new case or statutory authority to establish a prima facie case that he was eligible for resentencing. His petition was not affected by the substantive amendments enacted by Senate Bill 775 because he was not convicted of attempted murder or manslaughter based on imputed malice. Appellant was ineligible for

resentencing as a matter of law, and the trial court's failure to appoint counsel and conduct a hearing was not prejudicial.

We thus affirm the trial court's denial of his fifth petition in case No. F083705.

## V.    The Trial Court's Denial of Appellant's Sixth Petition

We now turn to appellant's appeal from the trial court's order that denied his sixth successive petition (case No. F085192).  Appellate counsel has filed a brief that raises one issue – that the trial court's order denying the sixth petition "is void for lack of subject matter jurisdiction, because the … court's order denying the [fifth] petition was and is still pending on appeal."

### *The Trial Court's Jurisdiction*

Appellant's argument requires review of two cases:  *People v. Burhop* (2021) 65 Cal.App.5th 808 (*Burhop*), and *People v. Cress* (2023) 87 Cal.App.5th 421 (*Cress*).

In *Burhop*, the trial court denied the petitioner's section 1172.6 petition and he filed an appeal.  The petitioner filed another section 1172.6 petition before the appellate court issued remittitur in that appeal, and the trial court granted relief.  (*Burhop, supra*, 65 Cal.App.5th at pp. 811–813.)  In a People's appeal, *Burhop* reversed the trial court's order that granted relief in the successive petition and held that order was "null and void for lack of subject matter jurisdiction" because the appeal from the prior petition was pending before the appellate court.  *Burhap* remanded the matter for further proceedings. (*Id.* at pp. 813–816.)

In *Cress,* the trial court denied the petitioner's first section 1172.6 petition and he filed an appeal.  While his appeal was pending, the petitioner filed a second section 1172.6 petition in the trial court.  The trial court dismissed the second petition because the appeal from his first petition was still pending.  (*Cress, supra*, 87 Cal.App.5th at pp. 423–424.)  On appeal, petitioner relied on *Burhop* and argued the trial court lacked jurisdiction to dismiss his second petition.  *Cress* rejected the petitioner's reliance on *Burhop* and held the trial court's dismissal of the second petition,

29.

"if error at all, was not jurisdictional error. Accordingly, the error was invited. [Citation.] [¶] For another thing, petitioner has not shown that he was prejudiced. As long as the *effect* of the dismissal was indistinguishable from the *effect* of a denial or a stay, any error was harmless. The dismissal was plainly without prejudice, as the trial court did not intend it to bar further proceedings on the first petition. Accordingly, if, after the first appeal is decided, petitioner still wants to proceed on his second petition, all he has to do is refile it." (*Cress, supra*, 87 Cal.App.5th at p. 425.)

*Analysis*

Appellant argues that *Cress* was wrongly decided, and the trial court's order denying his sixth petition was void for lack of subject matter jurisdiction. Appellant asserts the court's order must be reversed and the matter remanded for reconsideration.

As in *Cress*, however, any error resulting from the trial court's order denying appellant's sixth successive petition, while his appeal was pending from the denial of his fifth petition, was not prejudicial. The alleged error was necessarily invited based upon appellant's repeated conduct of filing successive petitions for resentencing immediately after the denial of his previous petitions.

We further note that an issue is arguable on appeal if it has a reasonable potential for success and, if resolved favorably for the appellant, the result will either be a reversal or a modification of the judgment. (*People v. Johnson* (1981) 123 Cal.App.3d 106, 109.) Appellant filed his sixth petition by checking boxes on a preprinted form, claiming he stated a prima facie case for resentencing under section 1172.6 because he was purportedly convicted of two counts of first degree murder with special circumstances based on imputed malice. In this appeal, appellant has not suggested why his sixth petition was meritorious, and only requests remand because the judgment was "void."

The trial court summarily denied appellant's sixth petition without appointing counsel or conducting a hearing. As with his fifth petition, however, the court's error was not prejudicial because appellant's sixth petition was not based on any changes in

30.

statutory or case law interpreting section 1172.6. Indeed, the trial court could have denied appellant's sixth petition as an improper successive petition since the record of conviction establishes that he was convicted as the actual killer and is ineligible for resentencing as a matter of law. (*Farfan, supra*, 71 Cal.App.5th at pp. 946–947, 950–951.)

Finally, we note that in contrast to *Cress*, the trial court denied appellant's sixth petition "with prejudice." As explained in *Farfan*, the California Supreme Court's ruling in *Lewis* and the enactment of Senate Bill 775 demonstrated the "still-evolving state of [section 1172.6] jurisprudence," and new statutory enactments and judicial interpretations of the statute "may afford a petitioner grounds for claiming eligibility for relief under the statute that were not previously available under other judicial interpretations," so that a new successive petition would not be procedurally barred under those circumstances. (*Farfan, supra*, 71 Cal.App.5th at pp. 950–951.)

We are thus compelled to find the court's order should be modified to strike the phrase that it denied appellant's sixth petition "with prejudice." Instead, appellant's sixth petition should have been denied "without prejudice," but subject to the limiting circumstances to filing a new petition only if it is based on new statutory or case authority relevant to his two convictions for first degree murder with special circumstances.

## DISPOSITION

The trial court's order of November 29, 2021, denying appellant's fifth petition for resentencing, is affirmed.

The trial court's order of October 5, 2022, denying appellant's sixth petition for resentencing "with prejudice," is modified to strike the phrase "with prejudice," and to instead state the petition was denied "without prejudice." As modified, the court's order is affirmed.

31.